# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-6277 (JFB)
_____

LAURENCE HOLZER AND GLOBAL APPRAISAL SOLUTIONS, LLC,

Appellants,

VERSUS

R. KENNETH BARNARD, CHAPTER 7 TRUSTEE OF IDEAL MORTGAGE BANKERS, LTD, A/K/A LEND AMERICA, A/K/A CONSUMER FIRST LENDING KEY,

Appellee.

_____

**MEMORANDUM AND ORDER**
July 27, 2016
_____

JOSEPH F. BIANCO, District Judge:

Laurence Holzer ("Holzer") and Global Appraisal Solutions ("Global" and with Holzer, collectively, "Appellants") appeal from Bankruptcy Judge Louis A. Scarcella's October 14, 2015 Memorandum Decision, which denied Global's Claims Allowance Motion and granted the Trustee R. Kenneth Barnard ("Trustee" or "Appellee")'s Claims Objection Motion. The Trustee has also filed a motion to dismiss Appellants' appeal. For the reasons set forth below, the Court finds that the Bankruptcy Court did not err in denying Global's Claims Allowance Motion and granting the Trustee's Claims Objection Motion, and affirms the rulings of the Bankruptcy Court in all respects.

I. BACKGROUND

A. Facts

The following facts, which are not in dispute, are taken from the record of the Bankruptcy Court in the underlying proceeding.

1. Debtor's Bankruptcy

Ideal Mortgage Bankers Ltd., a/k/a Lend America, a/k/a Consumer First Lending Key ("Debtor") was a mortgage lender in Suffolk County, New York that originated loans and participated in mortgage orientation programs sponsored by the United States Department of Housing and Urban Development ("HUD"). The Debtor was

1

approved by HUD to do business in 48 states and the District of Columbia. By the end of 2009, the Debtor lacked sufficient funds to continue its business, and on or about December 1, 2009, the Debtor lost its ability to originate loans backed by HUD. On December 4, 2009, the New York State Banking Department issued a cease and desist order that required the Debtor to cease engaging in activities as a mortgage banker. Various officers of the Debtor, including Michael Ashley ("Ashley"), chief business strategist, and Helene DeCillis ("DeCillis"), chief operating officer, were criminally investigated, and allegations surfaced that the Debtor misappropriated funds available under its warehouse line of credit.

An involuntary chapter 7 petition was filed against the Debtor by EAM Land Services, PSS Settlement Services, LLC, Evans National Leasing Inc., and Michael and Kimberly McLean ("Petitioning Creditors") on November 30, 2010. On December 2, 2010, Petitioning Creditors filed a motion seeking the appointment of an interim trustee, which Bankruptcy Judge Dorothy T. Eisenberg granted on December 13, 2010.[1] R. Kenneth Barnard was appointed as interim trustee on December 15, 2010, and subsequently became the permanent trustee pursuant to 11 U.S.C. § 702(d). The order of relief was entered on December 29, 2010, and shortly thereafter, the Trustee sought and obtained several orders pursuant to Bankruptcy Rule 2004 authorizing him to issue third party subpoenas to various financial institutions, and some officers, employees, and legal counsel of the Debtor.

2. Debtor's Relationship with Global

As part of the Debtor's loan origination process, either the Debtor or the potential borrower would select one of five appraisal management companies on the Debtor's approved vendor list to conduct an appraisal of the property for which the Debtor served as the originating lender. Global was one of the appraisal management companies on the Debtor's approved vendor list. Global is wholly owned by Holzer, and did not directly appraise properties, but instead, served as a central source from which appraisals could be ordered nationally and managed the appraisal process. The Debtor and Global did not have a written contract specifying the terms of Global's appraisal services; rather, Global would charge the Debtor for the cost of the appraisal upon the completion or cancelation of each appraisal order. The cost included both the appraiser's fee and Global's management fee. If the Debtor canceled an appraisal order, Global would still charge the Debtor for its management fee.

On or about November 19, 2009, Global filed an action against the Debtor in the United States District Court for the Eastern District of New York (the "Global Action"), seeking to recover amounts that Global claimed the Debtor owed it for unpaid appraisals. The Debtor defaulted in the Global Action, and as a result, on April 6, 2010, Global obtained a default judgment against the Debtor in the amount of $763,157, plus interest. The amount of the default judgment was based on a February 19, 2010 affidavit by Holzer in which he claimed that Debtor owed $45,417 for 158 completed but unpaid appraisal reports ordered by the

---

[1] The bankruptcy case was later assigned to Bankruptcy Judge Scarcella due to the retirement of Bankruptcy Judge Eisenberg.

Debtor, and $717,740 for 1,594 appraisals ordered by the Debtor that were later canceled. Holzer attached two lists to his affidavit that detailed the appraisals completed and cancelled. The default judgment was docketed on May 17, 2010 with the Clerk of Suffolk County, New York. On May 17, 2010, Global obtained an execution judgment from the Suffolk County Clerk that directed the Sheriff of Suffolk County to satisfy the default judgment from any of the Debtor's real or personal property within Suffolk County. The writ of execution was returned unsatisfied.

On November 29, 2010, Global filed an action in the United States District Court for the Eastern District of New York (the "Global Fraudulent Conveyance Action") seeking to recover alleged fraudulent transfers made by the Debtor to Ashley, Ashley's relatives, and Ashley's affiliated entities. The involuntary bankruptcy petition was filed the next day, and the Global Fraudulent Conveyance Action was automatically stayed pursuant to 11 U.S.C. § 362(a).

### 3. Claims

On February 7, 2011, Global filed Claim No. 4-1, asserting a secured claim of $765,296.62 based on the default judgment plus $2,139.62 of interest. With Claim No. 4-1, Global attached a copy of the default judgment, an itemized statement of interest, an abstract of the default judgment, and the execution judgment.

On November 11, 2011, Global filed Claim No. 4-2 as an amendment to Claim No. 4-1. Claim No. 4-2 asserted the same secured claim of $765,296.62, based on the default judgment and prepetition interest. With Claim No. 4-2, Global attached (1) a May 13, 2010 amended retainer agreement between Holzer and Fellheimer & Eichen, LLP ("Fellheimer"), the law firm that represented Global, and (2) a note explaining that, under the amended retainer agreement, Global agreed to pay Fellheimer 40% of any recovery received by Global from its dispute with the Debtor, minus the $25,000 retainer Global paid the firm. Fellheimer requested that all of Global's proceeds under Claim 4-2 be disbursed jointly to Global and Fellheimer because Fellheimer previously applied the entire retainer to fees owed by Global.

On May 2, 2012, this Court dismissed the Global Fraudulent Conveyance Action, finding that only the Trustee, not Global, had standing post-petition to file a fraudulent conveyance action to recover the Debtor's property from third parties on behalf of the Debtor's bankruptcy estate. Global then terminated Fellheimer, and the two parties entered into a mutual release on May 24, 2012, by which Fellheimer agreed to send Global the executed assignment of Claim No. 4-2 and $5,000.[2]

On October 12, 2012, Global filed Claim No. 27, which (1) asserted a secured claim of $763,157 plus interest as per 28 U.S.C. § 1961 based on the default judgment, and (2) asserted that, under section 507(a)(7) of the Bankruptcy Code, the debt owed to Global

---

[2] Global thereafter retained the Law Office of Morse Geller, which filed a notice of appearance on July 11, 2012. On August 22, 2012, Global filed a notice to substitute Marjory Cajoux as Global's counsel. Cajoux filed Claim No. 27, and at some point thereafter, was terminated. Global then retained Douglas M. Clemmons, who never filed a notice of appearance or any other papers with the Bankruptcy Court, and who was not admitted to practice in the Eastern District of New York. At this point, Holzer proceeded to file papers in the bankruptcy case *pro se* on behalf of both himself and Global as its managing member.

3

was entitled to a priority in payment. Global did not attach any supporting documentation.

### 4. Claims Allowance Motion and Claims Objection Motion

On April 22, 2014, Holzer, proceeding *pro se* on behalf of himself and Global, filed a Claims Allowance Motion seeking (1) to lift the automatic stay and have Claim No. 4-1 paid immediately as either a secured claim or an administrative expense claim, (2) to have $25,000 of legal expenses Global incurred to Fellheimer be reimbursed as an administrative expense under 11 U.S.C. § 503(b), and (3) to have the Trustee and his professionals removed for alleged conflicts of interest.[3]

On June 2, 2014, the Trustee filed an objection to the Claims Allowance Motion, asserting that (1) Claim No. 27 is a prepetition money judgment and at best, a disputed general unsecured claim because the default judgment was not secured by a consensual or judgment lien recorded against the Debtor's assets, and (2) there is nothing in "Federal Mortgage Law" that indicates that Claim No. 27 is secured or entitled to administrative expense priority status pursuant to 11 U.S.C. §§ 503 and 507. The Trustee also argued that the default judgment was recorded only in Suffolk County, where the Debtor does not own or maintain real or personal property, and that none of the cash proceeds recovered during the administration of the Debtor's estate were derived from the liquidation or disposition of assets that served as collateral for the default judgment.

On June 6, 2014, the Trustee filed a Claims Objection Motion seeking (1) to expunge Claims No. 4-1 and No. 4-2 because they were superseded by Claim No. 27, and (2) to reclassify Claim No. 27 from a secured claim to a general unsecured claim. The Trustee also argued that Global did not have standing to bring the Claims Allowance Motion *pro se*, and thus, was required to retain legal counsel to seek legal relief.

On June 10, 2014, Global filed a "Notice of Transfer of Claim Other Than For Security," by which Global purported to transfer Claim No. 4-2 to Holzer. On June 19, 2014, Global filed its opposition to the Trustee's Claims Objection Motion.

Bankruptcy Judge Scarcella held an extended initial hearing on the Claims Motions on July 22, 2014, and an additional day of the evidentiary hearing on August 8, 2014.

On October 14, 2015, Bankruptcy Judge Scarcella issued a Memorandum Decision, denying Global's Claims Allowance Motion, and granting the Trustee's Claims Objection Motion to the extent that Claim No. 4-1 and Claim No. 4-2 were each to be disallowed and expunged from the Bankruptcy Court's Claims Register, and Claim No. 27 was to be reclassified from a secured claim to a general unsecured claim. Bankruptcy Judge Scarcella also denied Global's request for relief from section 362(a)'s automatic stay and the request that the Trustee and his professionals be removed.

### B. Procedural History

On November 2, 2015, Appellants filed a notice of appeal from the Bankruptcy Court's October 14, 2015 Memorandum. Appellants

---

[3] Although the Claims Allowance Motion mentioned only Claim No. 4-1, the Bankruptcy Court addressed Claim No. 4-2 and Claim No. 27 as well because "they were filed on behalf of Global, have not been withdrawn and are subject to the Trustee's Claim Objection Motion." *In re Ideal Mortg. Bankers*, *Ltd*., 539 B.R. 409, 419 (Bankr. E.D.N.Y. 2015).

4

filed their brief on February 19, 2016. Appellee filed his brief on March 8, 2016. Appellee also filed a motion to dismiss the appeal on April 18, 2016. Appellants filed "objections" to the motion to dismiss on May 16, 2016, and Appellee filed his reply on May 20, 2016.[4] The Court has fully considered all of the submissions of the parties.

II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001.

In general, the Court reviews the Bankruptcy Court's legal conclusions *de novo*, mixed questions of fact and law *de novo*, and factual findings for clear error. *See R*[2] *Invs., LDC v. Charter Commc'ns. Inc. (In re Charter Commc'ns, Inc.)*, 691 F.3d 476, 482-83 (2d Cir. 2012); *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).

III. DISCUSSION

Appellants challenge the Bankruptcy Court's October 14, 2015 Memorandum decision denying Global's Claims Allowance Motion and granting the Trustee's Claims Objection Motion. In particular, Appellants argue that Claim No. 27 should be "reclassif[ied] as an executory contract and an administrative expense that the Trustee is not able to avoid." (Appellants' Mem. at 1.) For the reasons that follow, the Court, under *de novo* review, affirms the Bankruptcy Court's October 14, 2015 Memorandum decision denying Global's Claims Allowance Motion and granting the Trustee's Claims Objection Motion.

A. Standing

The Bankruptcy Court concluded that (1) Global, as a limited liability company, could not appear in the case other than through an attorney, and (2) even if Global properly assigned Claim No. 4-2 to Holzer (which it did not), such assignment would not give Holzer the right to appear on behalf of Global. For the reasons set forth below, the Court agrees and affirms the Bankruptcy Court's conclusions that Holzer may not appear on behalf of Global, nor may Global assign its claims to Holzer in order to circumvent this standing issue.

It is well-settled that a *pro se* litigant may only represent his or her own interests in federal court, and not the interests of another individual, corporation, or any other entity. *See, e.g.*, *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) ("We have interpreted 28 U.S.C. § 1654, which governs appearances in federal court, to allow two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. The statute does not permit unlicensed laymen to represent anyone else other than themselves. . . . Accordingly, a layperson may not represent a separate legal entity such as a corporation."

---

[4] Holzer has also submitted a variety of other documents to the Court. For example, on May 24, 2016, Holzer filed a "preliminary statement" in which he largely restated prior arguments and requested that the Bankruptcy Court's decision be overturned.

(internal citation and quotation marks omitted)); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (same). Thus, it is clear that Holzer could not proceed on behalf of Global in the bankruptcy proceeding (nor in his appeal before this Court).[5]

Further, the Bankruptcy Court properly determined that Appellants could not circumvent the standing issue by having Global assign its claim to Holzer. Even assuming that Global properly assigned its claim to Holzer (which the Bankruptcy Court found it did not), "[i]n light of [the] policy reasons for preventing a lay person from representing a corporation in litigation, the federal courts have, in cases governed by federal law, disapproved any circumvention of the rule by the procedural device of an assignment of the corporation's claims to the lay individual." *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983). The Second Circuit has clearly held that an individual may not proceed *pro se* to assert a claim that has been assigned to it by a corporation. *See id.* at 23 (holding that corporation could not assign its claim to its sole stockholder and chief executive officer to allow him to proceed *pro se* to pursue claims); *Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) ("Although Appellant's complaint alleged that a corporation . . . had assigned its claims to him, we have specifically barred the assignment of claims by a corporation to a layperson so as to permit the layperson to proceed *pro se*."); *Lupowitz, Inc. v. Eclipse Holdings, Inc.*, 108 F.3d 1370 (2d Cir. 1997) (affirming district court's determination that individuals to whom corporation assigned claims could not proceed *pro se*). Therefore, the Bankruptcy Court properly concluded that, even if Global properly assigned its claims to Holzer, Holzer could not proceed *pro se* to prosecute the Claims Allowance Motion or oppose the Claims Objection Motion.

Thus, because Holzer could not properly proceed *pro se* on behalf of Global, nor could Global assign its claim to Holzer to allow him to prosecute the Claims Allowance Motion or oppose the Claims Objection Motion, sufficient grounds existed to deny the Claims Allowance Motion based on a lack of standing alone. However, because the Bankruptcy Court reached the merits of the Claims Motions as well, this Court will also proceed to review the merits.

B. The Claims Motions

With respect to the Claims Motions, the Bankruptcy Court first concluded that Claims Nos. 4-1 and 4-2 were disallowed and expunged from the Bankruptcy Court's Claims Register because Claim No. 27 was the most recent claim filed on behalf of Global and asserted the same debt or claim. The Bankruptcy Court then concluded that Claim No. 27 should be reclassified from a secured claim to a general unsecured claim. For the reasons set forth below, the Court agrees and affirms the Bankruptcy Court's conclusions.

1. Claims No. 4-1 and 4-2

As an initial matter, Appellants do not dispute that Claims No. 4-1 and 4-2 were superseded by Claim No. 27. (*See* Appellants' Legal Mem. at 2 ("[F]or the sake

---

[5] Further, the Court notes that Holzer himself acknowledged this principle in his "Motion for Leave for the Filing of Brief and For Appearance" in which he stated, "[t]his motion arises, Pursuant to Federal Rules, in that typically a person who is an individual, is not able to appear in representation of a Claim in Federal Court . . . Holzer respectfully comes, and requests leave to these limiting requirements by judicial exception." (Dkt. No. 14, at 1.)

of this hearing, there is 'only one claim.' The claim, (Number 27 on the Claims Register in Case 10-79280), which amended Claim 4-1 is a judgment for actual damages . . . .").) Further, the Bankruptcy Court correctly noted that claims that are amended and superseded by subsequent claims filed by the same creditor are regularly disallowed and expunged. *See, e.g.*, *In re Dewey & Leboeuf LLP*, No. 12-12321 (MG), 2014 WL 201586, at *2 (Bankr. S.D.N.Y. Jan. 16, 2014) ("[C]laim number 833 states a claim by the same creditor for the same purported liability identified in the later-filed Stanwyck Claim. . . . The Court therefore concludes that claim number 833 was amended and superseded by the Stanwyck Claim, and claim number 833 should therefore be disallowed and expunged."); *In re Enron Corp.*, No. 01 B 16034 (AJG), 2005 WL 3874285, at *1 n.1 (Bankr. S.D.N.Y. Oct. 5, 2005) ("Inasmuch as the Initial Claim was amended and superceded by the Amended Claim, it was disallowed and expunged pursuant to this Court's Order."); *EDP Med. Computer Sys., Inc. v. United States*, No. 03-CV-3619 (FB)(RLM), 2005 WL 3117433, at *2 (E.D.N.Y. Nov. 22, 2005) (noting that "the bankruptcy court issued an order allowing the Amended Proof of Claim and disallowing the Proof of Claim as having been superseded by the Amended Proof of Claim"), *aff'd*, 480 F.3d 621 (2d Cir. 2007). Claim No. 4-2 expressly indicated that it was amending a previously filed claim (Claim No. 4-1), and thus, was correctly disallowed and expunged from the Court's Claims Register. Although Claim No. 27 did not indicate on its face that it was amending a prior claim, it asserts a claim based upon the same default judgment as Claim No. 4-2 (apart from Claim No. 4-2's inclusion of Fellheimer's contingency legal fees). Therefore, because Claim No. 27 was a subsequently filed claim that asserted the same claim as Claim No. 4-2, the Bankruptcy Court correctly found that Claim No. 4-2 should have been disallowed and expunged from the Court's Claims Register.

2. Claim No. 27

Appellants contend that Claim No. 27 should be classified as a secured claim, rather than as a general unsecured claim. Appellee argues that the Bankruptcy Court properly reclassified Claim No. 27 as a general unsecured claim. As explained in detail below, the Court concludes that the Bankruptcy Court properly found that Claim No. 27 should be reclassified as a general unsecured claim.

a. Secured or Unsecured Claim

Bankruptcy Code section 506(a)(1) provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). As filed, Claim No. 27 asserts a secured claim based on the default judgment. A secured claim could arise through either a voluntary agreement or an involuntary lien.

The Bankruptcy Code defines "security interest" as a "lien created by an agreement." 11 U.S.C. § 101(51). According to Federal Rule of Bankruptcy Procedure 3001(d), "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security

7

interest has been perfected." Fed. R. Bankr. P. 3001(d); *see also Sovereign Bank v. Strother*, No. 1:11-CV-1228 (LEK), 2013 WL 3243555, at *2 (N.D.N.Y. June 26, 2013). "In analyzing whether an alleged secured creditor's interest is perfected, [courts] must look to state law." *In re Milton Abeles, LLC*, No. 812-70158 (REG), 2013 WL 5304014, at *3 (Bankr. E.D.N.Y. Sept. 20, 2013) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)); *see also Buffalo Metro. Fed. Credit Union v. Mogavero (In re Cooley)*, No. 00-CV-0345E(M), 2001 WL 135822, at *2 (W.D.N.Y. Feb. 13, 2001) ("Questions in bankruptcy matters regarding the perfection of liens are decided under state law."). Global has admitted that it had no written contracts with the Debtor (*see* Aug. 8, 2014 Tr. at 35, Ex. 2 to Appellee's Mot. to Dismiss ("[T]he answer is the debtor had no contract with any of its five vendors. . . ."); *In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. at 436 ("[A]fter extensive oral argument at the Hearings on this issue, Global admitted at the Aug. 8 Hearing that no written contract existed between it and the Debtor.")), and has not alleged that it had any type of agreement that granted it a security interest in Debtor's property. Thus, there is no evidence to demonstrate that Global had a voluntary lien as to Debtor's property.

A secured claim could also arise through an involuntary, judicial lien. The Bankruptcy Code defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). "Once docketed, a judgment becomes a lien on the real property of the debtor in that county." *Schiff Food Prods., Co. v. M & M Imp. Exp.*, 924 N.Y.S.2d 158, 159 (N.Y. App. Div. 2011) (quotation marks and citation omitted); *see also* N.Y. C.P.L.R. § 5203. A money judgment entered by a federal court that is filed in the clerk's office for any county can be docketed to have the same effect as a judgment entered in the state supreme court within that county. N.Y. C.P.L.R. § 5018(b). However, in order for the judgment to attach to judgment debtor's real property, the federal judgment must be docketed in the clerk's office of that county. *See Sterling Die Casting Co., Inc. v. Local 365 UAW Welfare and Pension Fund (In re Sterling Die Casting Co., Inc.)*, 126 B.R. 673, 677 (Bankr. E.D.N.Y.) ("[U]nder New York law a federal judgment must be docketed in the office of the clerk of a county before it obtains the status of a judgment lien on the judgment debtor's real property in that county."), *aff'd*, 132 B.R. 99 (E.D.N.Y. 1991). Thus, as the Bankruptcy Court properly noted, a judgment itself does not give a creditor an interest in the debtor's property; rather, the judgment creditor remains unsecured until the judgment is recorded in a county where the debtor owns real property.

Additionally, as to personal property, a judgment creditor may deliver a writ of execution to the sheriff, which directs the sheriff to locate, seize, and sell property of the judgment debtor so that the proceeds can be paid to the debtor. N.Y. C.P.L.R. § 5232. However, ninety days after a levy is made by the sheriff, it becomes void except as to property that has already been transferred. *Id.*

Accordingly, as the Bankruptcy Court properly found, "the judgment itself does not give the judgment creditor an interest in the judgment debtor's property, nor does it accord priority in any of the judgment debtor's property or income. The judgment creditor remains unsecured until either 'execution' is obtained on the judgment or a judgment lien against real property is obtained by recording the judgment in the county in which the judgment debtor owns real property." *In re Ideal Mortg. Bankers Ltd.*, 539 B.R. at 427.

Further, "Bankruptcy Rule 3001 requires a claimant to attach supporting documentation to a proof of claim." *In re Aiolova*, No. 11-10503 (BRL), 2013 WL 5818893, at *2 (Bankr. S.D.N.Y. Oct. 29, 2013); *see also* Fed. R. Bankr. P. 3001(c)(1) ("[W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim."). "If a proof of claim is not supported by the requisite documentation, it is not presumed to be *prima facie* valid." *In re Aiolova*, 2013 WL 5818893, at *3; *see also In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) ("Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim."); *Green Tree Servicing, LLC v. Wilson* (*In re Wilson*), 532 B.R. 486, 490 (S.D.N.Y. 2015) (same). Claim No. 27 does not include any supporting documentation to demonstrate that Appellants had a security interest in the Debtor's property. Therefore, Claim No. 27 is not presumed to be *prima facie* valid, and Global needed to present evidence of a security interest in response to the Trustee's objection to the claim.

Additionally, as the Bankruptcy Court noted, even if the default judgment and execution judgment that were attached to Claim No. 4-1 (but not Claim No. 27) were considered so that Claim No. 27 was presumed to be *prima facie* valid, there is no evidence that a judicial lien attached to Debtor's assets. Although the default judgment was docketed in Suffolk County, Debtor had no real property there. Further, Global's writ of execution, in which it attempted to levy against the Debtor's personal property in Suffolk County, was returned unsatisfied.

Thus, based on the lack of evidence demonstrating that Claim No. 27 was secured, the Bankruptcy Court properly found that Claim No. 27 should be reclassified as an unsecured claim. *See, e.g.*, *Samson v. Western Capital Partners (In re Blixseth)*, 489 B.R. 154, 202 (Bankr. D. Mont. 2013) (finding claim should be designated as unsecured where "[o]ther than the default judgment and vague testimony, [creditor had] not proved the validity of its claim."), *aff'd*, 514 B.R. 871 (D. Mont. 2014); *In re Cruse*, No. 12-8154-RLM-13, 2013 WL 323275, at *2 (Bankr. S.D. Ind. Jan. 28, 2013) ("Rule 3001(d) of the Federal Rule of Bankruptcy Procedure further provides that if a claimant contends that it has a security interest in the debtor's property, evidence that the security interest has been perfected must accompany the proof of claim. No such evidence accompanied the proof of claim. With no proof of a written security interest or the filing a financing statement in either the Dubois County Recorder's office or the Secretary of State's office, [creditor] has not proven that he holds a secured claim. Without more, his claim is unsecured.").

    b. Section 507(a) Priority

Section 726 of the Bankruptcy Code sets forth the distribution scheme among creditors in a chapter 7 case and directs that claims under section 507(a) should be paid before distribution is made to general unsecured claims. 11 U.S.C. § 726(a)(1). Section 507(a) sets forth ten categories of allowed unsecured claims that are entitled to priority in payment. 11 U.S.C. § 507. Each category must be paid in full before the next category can be paid. *See id.*

    i. Section 507(a)(2) Administrative Expense Priority

Administrative expenses allowed under section 503(b) have the second priority in

9

payment under section 507(a)(2). 11 U.S.C. § 507(a)(2). The term "administrative expense" is not defined by the Bankruptcy Code. However, section 503, which deals with the allowance of administrative expenses, enumerates nine categories of expenses that are granted priority as allowed administrative expenses. *See* 11 U.S.C. § 503(b). These administrative expenses are generally costs "incurred by the bankruptcy estate after the commencement of the bankruptcy case." *In re Norwalk Furniture Corp.*, 418 B.R. 631, 633 (Bankr. N.D. Ohio 2009). "The party asserting the status of an administrative claimant has the burden of proof." *In re Patient Educ. Media, Inc.*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998); *see also In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006).

Global argued to the Bankruptcy Court that it was entitled to administrative expense priority under several different provisions of section 503(b) due to its "substantial contribution to the estate." Namely, Global argued that: (a) the Trustee used appraisals that Global provided to the Debtor prior to the bankruptcy case in order to close on mortgage transactions that were pending on the Petition date; (b) it should be compensated for the $25,000 retainer it paid to Fellheimer as an administrative expense because Fellheimer produced copies of the Debtor's bank statements that it obtained during its representation of Global to the Trustee; (c) it brought a fraudulent conveyance action against Ashley prior to the commencement of the bankruptcy case, which resulted in the settlement of the Trustee's fraudulent conveyance action against Ashley and other defendants for over $1,000,000; and (d) its pre-bankruptcy litigation against the Debtor and its officers caused criminal charges to be brought against Ashley and DeCillis. For the reasons set forth below, the Court affirms the Bankruptcy Court's determination that Global is not entitled to administrative expense priority under any of these theories, nor any of the other theories considered by the Bankruptcy Court.

1. Section 503(b)(1)(A)

Section 503(b)(1)(A) grants administrative expense priority for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In order to be entitled to priority under section 503(b)(1)(A), a party "must demonstrate that (1) his claim arose from a transaction with or on account of consideration furnished to the debtor-in-possession, and (2) the transaction or consideration directly benefitted the debtor-in-possession." *In re Patient Educ. Media, Inc.*, 221 B.R. at 101; *see also In re Helm*, 335 B.R. at 538. "A clear relationship between the expenditures made and the benefit conferred on the estate must therefore be shown by the movant." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991). "Ultimately, administrative expense status should be granted only to claims representing post-petition debts incurred by the debtor to preserve the estate." *In re Keegan Util. Contractors, Inc.*, 70 B.R. 87, 89 (Bankr. W.D.N.Y. 1987).

Claim No. 27 is clearly based on Debtor's failure to pay Global for appraisals, which resulted in a default judgment. Even Appellants admit that Global was "a pre-petition judgment creditor against Ideal Mortgage" rather than a post-petition creditor. (*See* Appellants' Legal Mem. at 1.) Thus, it is clear that Claim No. 27 was not a cost incurred postpetition in preserving the bankruptcy estate.

Further, although Global argued that the Trustee used prepetition appraisals to close on mortgages and administer the estate's

assets, and thus, that such appraisals were an actual, necessary cost of preserving the estate, Global did not offer any evidence of this. Without any evidence of benefit to the estate, Global failed to meet its burden of proof in demonstrating that it was entitled to administrative expense priority under section 503(b)(1)(A). *See, e.g.*, *In re Enron Corp.*, 279 B.R. 695, 706 (Bankr. S.D.N.Y. 2002) ("A potential benefit is not sufficient. . . . In order for a creditor's claim to be entitled to administrative status, there must be actual use of the creditor's property by the debtor-in-possession.").

Global also argued that it made a substantial contribution to the estate by producing the Debtor's bank statements that Fellheimer obtained in connection with the Global Fraudulent Conveyance Action, and thus, that Fellheimer's legal fees should be given administrative priority status. It is possible for a creditor to be granted an administrative expense claim where it used its own funds to obtain information that a trustee would otherwise have incurred an expense to obtain if the information is shared with the trustee and the trustee benefits from this information. *See In re Pappas*, 277 B.R. 171, 179 (Bank. E.D.N.Y. 2002) (finding judgment creditor could recover, as an administrative expense, expenses incurred in hiring private investigator and obtaining documents where trustee's counsel conceded that trustee benefitted from this information and would have incurred expenses if creditor had not made information available to trustee). However, the documents at issue were produced pursuant to a document subpoena ordered by the Bankruptcy Court and were duplicative because Trustee had already obtained the documents through a separate subpoena issued to Capital One Bank. Further, Global did not offer any evidence to demonstrate that the bank statements it produced were used to assist the Trustee in preserving or locating the Debtor's assets. Thus, there is no indication that turning over these duplicative bank records made a substantial contribution to the Trustee's administration of the estate. Therefore, the Court finds that the Bankruptcy Court correctly found that the $25,000 retainer paid to Fellheimer was not entitled to administrative priority under section 503(b)(1)(A).

2. Section 503(b)(3)(B)

Section 503(b)(3)(B) provides for administrative expense priority for "the actual, necessary expenses . . . incurred by . . . a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor." 11 U.S.C. § 503(b)(3)(B).

Global argued that Claim No. 27 was entitled to priority under section 503(b)(3)(B) because its prepetition litigation against Ashley and related entities resulted in a favorable recovery to the bankruptcy estate. However, the Bankruptcy Court properly found that Global failed to show how any expense incurred in this litigation qualified as an administrative expense under section 503(b)(3)(B). Global brought the Global Action and Global Fraudulent Conveyance Action prior to the commencement of the bankruptcy case, and thus, could not have obtained the Bankruptcy Court's approval as required under section 503(b)(3)(B). Further, the Global Action concluded prior to the bankruptcy case and resulted in the entry of the default judgment, in favor of Global, not the estate. Similarly, Global's litigation against the Debtor's officers in the Global Fraudulent Conveyance Action was intended for Global's benefit, and was dismissed by this Court because Global lacked standing to pursue a fraudulent conveyance action on behalf of Debtor's estate. Thus, the Global Fraudulent Conveyance Action also failed to

generate any benefit for the bankruptcy estate.

Further, to the extent that Global believes that it is entitled to recover $1,000,000 based on the Trustee's adversary proceeding against Ashley, Cooper Capital Group Ltd., and other Ashley related entities (the "No. 12-8443 Action"), it is clear that Global was not involved in this action. Instead, the No. 12-8443 Action was commenced and negotiated by the Trustee, and when the Trustee sought approval of the negotiated settlement, Global filed an objection asserting that "'the Trustee and his attorneys and HUD investigators, knowingly chose not to interview Global or include Global in its complaint against the Debtor and its officer, Ashley.'" *In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. at 433-34 (quoting Ashley Settlement Objection, at 3). Thus, by Global's own admission, it was not involved in the pursuit or settlement of the 12-8443 Action.

Therefore, because Global has not put forth any evidence to demonstrate it incurred any expense that resulted in a recovery to the estate, the Bankruptcy Court correctly found that it was not entitled to administrative expense priority under section 503(b)(3)(B).

3. Section 503(b)(3)(C)

Section 503(b)(3)(C) provides for administrative expense priority for "the actual, necessary expenses . . . incurred by . . . a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor." 11 U.S.C. § 503(b)(3)(C). To obtain administrative expense priority under section 503(b)(3)(C), the applicant "bears the burden of satisfying a two-prong test. First, the applicant must show a direct relationship between the expenses sought and the prosecution of the criminal activity. . . . Second, the applicant must prove that the prosecution of the criminal offense relates to a debtor's case, business, or property." *In re Summit Metals, Inc.*, 379 B.R. 40, 59 (Bankr. D. Del. 2007) (collecting cases), *aff'd*, 406 F. App'x 634 (3d Cir. 2011).

Global offered no evidence that it participated in any way in a criminal investigation or proceeding against the Debtor and its agents and officers, or that it accrued related expenses. Instead, Global merely claimed that it sued the Debtor and its officers in a civil suit. Clearly, pursuing a civil suit does not entitle Global to administrative expense priority under section 503(b)(3)(C).

4. Section 503(b)(3)(D)

Section 503(b)(3)(D) provides for administrative expense priority for "the actual, necessary expenses . . . incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). There is no similar provision for expenses incurred in making a substantial contribution in a chapter 7 case – the type of bankruptcy proceeding at issue here. As articulated by the Bankruptcy Court, courts have come to different conclusions as to whether section 503(b)(3)(D) can be applied outside of the chapter 9 or 11 context. *Compare In re Hackney*, 351 B.R. 179, 205 (Bankr. N.D. Ala. 2006) ("[T]his Court must conclude that if Congress intended for there to be a 'substantial contribution' administrative expense in Chapter 7 cases, Congress would not have limited 503(b)(3)(D) to cases under Chapter 9 and Chapter 11.") *and Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 945 (3d Cir. 1994) ("Expenses incurred after a chapter 11 case is converted to one under chapter 7, however, are not recoverable pursuant to [section 503(b)(3)(D)].") *with Mediofactoring; Coface Argentina v.*

*McDermott (In re Connolly N. Am. LLC)*, 802 F.3d 810, 819 (6th Cir. 2015) ("[W]e hold that § 503(b)(3)(D) of the Bankruptcy Code does not divest bankruptcy courts of authority to allow reimbursement under § 503(b) of reasonable administrative expenses of creditors whose efforts substantially benefit the bankruptcy estate and its creditors in a Chapter 7 proceeding."). However, assuming *arguendo* that section 503(b)(3)(D) could be applied in the chapter 7 context, Global must still show that it "bestowed a substantial benefit to the estate and assisted in the contribution of assets." *In re Pappas*, 277 B.R. at 176. Further, "to the extent that a creditor is claiming that it 'assisted the trustee,' it is necessary that the trustee agree that the creditor's efforts actually 'assisted' the trustee." *Id.* (considering application for administrative expense status under section 503(b) generally where claim did not fall into specific 503(b) category, but noting that substantial benefit must still be shown).

Here, the Trustee clearly disputes the notion that Global made a substantial contribution to the estate. Further, the Court agrees with the Bankruptcy Court's conclusion that Global failed to show how its prepetition litigation against the Debtor or individual defendants, or producing bank statements in response to the subpoena constituted "substantial contribution." Thus, the Court concludes that Global failed to demonstrate that it is entitled to administrative priority under section 503(b)(3)(D).

Thus, because Global failed to demonstrate that it was entitled to priority under the various subsections of section 503, the Court affirms the Bankruptcy Court's conclusion that Global was not entitled to administrative priority under section 503.

ii. Section 507(a)(7)

Although Global did not rely upon section 507(a)(7) in its Claims Allowance Motion or opposition to the Claims Objection Motion, the Bankruptcy Court also considered whether it applied because, on its face, Claim No. 27 asserted an entitlement to be paid as a priority unsecured claim under section 507(a)(7). Section 507(a)(7) provides for priority for "allowed unsecured claims of individuals, to the extent of $2,850 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7). "The two limitations imposed on those seeking priority distribution under section 507(a)(7) are (1) that the claim arise from the deposit of money and (2) that the services or goods remain undelivered." *Marshack v. Hammond (In re Four Star Fin. Servs., LLC)*, 469 B.R. 30, 32 (C.D. Cal. 2012).

For the reasons articulated by the Bankruptcy Court, section 507(a)(7) clearly does not apply to Claim No. 27. First, section 507(a)(7) applies to unsecured claims of individuals whereas Global is a corporate entity. Further, Global never gave the Debtor a deposit, nor was there an expectation that the Debtor would provide Global with goods or services. Instead, the default judgment was based on Holzer's claim that Debtor owed money to Global for Global's services in providing appraisals. Thus, the Court agrees with the Bankruptcy Court's conclusion that Global failed to demonstrate that Claim No. 27 qualified for priority status under section 507(a)(7).

c. Executory Contract

Global alternatively argued that Claim No. 27 was entitled to priority as an executory contract under section 365 of the Bankruptcy Code. The Bankruptcy Court determined that (1) no written contract existed between the parties, and thus, section 365 was inapplicable to Claim No. 27, and (2) even if the absence of a written contract was not dispositive, (i) no executory contract existed between the parties, and (ii) even if there was an executory contract, it was deemed rejected by operation of law under 11 U.S.C. § 365(d)(1). For the reasons explained below, the Court agrees with the Bankruptcy Court and affirms its conclusions.

As an initial matter, as discussed *supra*, Global admitted at the hearing before the Bankruptcy Court that there was no written contract between it and the Debtor. Instead, Global would charge the Debtor upon the completion or cancelation of each appraisal order.

In any event, even if section 365 was applicable, there was no executory contract between the parties. The term "executory contract" is not defined in the Bankruptcy Code, but it has been characterized as one "on which performance remains due to some extent on both sides." *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 379 (2d Cir. 2008) (internal quotation marks and citation omitted). Courts in the Second Circuit have adopted two different standards as to executory contracts. As the Bankruptcy Court concluded, Global failed to demonstrate that it had an executory contract under either standard.

The first approach provides that an executory contract is one "'under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'" *Id.* (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)). "In other words, under Countryman's 'material breach' test, a prepetition contract is executory when both sides are still obligated to render substantial performance." *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 3154763, at *3 (Bankr. S.D.N.Y. Aug. 4, 2008). This test expressly excludes contracts where the only remaining performance is the payment of money. *See id.* at *4 (collecting cases); *In re Chateaugay Corp.*, 102 B.R. 335, 347 (Bankr. S.D.N.Y. 1989) ("[I]t is clear that such obligations merely represent obligations for the payment of money only and are therefore insufficient to make these TBT Agreements executory."). Under the "Countryman approach," assuming there was a contract regarding the appraisals between the parties, it would not qualify as executory because Global fully performed prior to the Petition date and the only outstanding obligation was for Debtor to pay Global. The notion that Global fully performed is supported by the fact that it was able to obtain a default judgment against the Debtor for the unpaid appraisals. Thus, under the Countryman approach, the purported contract could not be executory, and thus, cannot be assumed under section 365.

The alternate "functional approach" provides that "a contract is not executory if the bargained for benefits were received by the debtor pre-petition, or if the assumption would saddle the estate with potentially onerous obligations, while rejection would confer benefits." *In re Chateaugay Corp.*, 102 B.R. at 345 n.11; *see also In re Bluman*, 125 B.R. 359, 363 (Bankr. E.D.N.Y. 1991). Under the functional approach,

a court does not consider remaining mutual material performance but instead considers the goals that assumption or rejection were expected to accomplish. . . . These goals include: (1) taking advantage of contracts which will benefit the estate; (2) relieving the estate of burdensome contracts; (3) promoting the debtor's fresh start; (4) permitting the allowance and determination of claims; and (5) preventing parties from remaining in doubt concerning their status vis-a-vis the estate.

*In re Bradlees Stores, Inc.*, No. 00-16033, 2001 WL 34809984, at *5 (Bankr. S.D.N.Y. Mar. 28, 2001) (internal quotation marks and citations omitted), *aff'd*, No. 00-16033 (BRL), 2001 WL 1112308 (S.D.N.Y. Sept. 20, 2001); *see also In re Bluman*, 125 B.R. at 363 (same). Any contract based on the appraisals would fail to qualify under the functional approach because the Debtor already received the benefit of the appraisals pre-petition. Further, assuming the contract would saddle the estate with the burden of paying Global's unsecured claim ahead of other claims and would be particularly onerous considering much of the default judgment was based on canceled appraisal orders for which the Debtor did not incur any benefit. Thus, the purported contract would not qualify as executory under the functional approach.

Finally, even if there was an executory contract, it was deemed rejected by operation of law under 11 U.S.C. § 365(d)(1). Section 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any executory contract." 11 U.S.C. § 365(a). "Assumption is in effect a decision to continue performance" and "requires the debtor to cure most defaults and continues the parties' rights to future performance under the contract or lease." *In re Penn Traffic Co.*, 524 F.3d at 378 (citing 11 U.S.C. § 365(b)). Alternatively, "the rejection of an executory contract . . . constitutes a breach of such contract." 11 U.S.C. § 365(g); *see also In re Penn Traffic Co.*, 524 F.3d at 378. "In the event of rejection, the non-debtor party is generally relegated to pursuing an unsecured prepetition claim against the estate." *In re Penn Traffic Co.*, 524 F.3d at 378 (citation omitted). If a trustee does not assume or reject an executory contract within a certain time period, the executory contract is considered rejected. *See* 11 U.S.C. § 365(d)(1) ("In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected."). Here, the order for relief was entered in the bankruptcy case on December 29, 2010. The Trustee did not assume or reject any contract between the Debtor and Global in the 60-day period after relief was entered, nor did he request additional time to do so. Accordingly, under section 365(d)(1), the Trustee is considered to have rejected any executory contract between the Global and Debtor by the lack of action during the requisite time period. Thus, any claim based on a contract between the parties would be an unsecured claim for breach of contract, rather than a claim with priority as an executory contract.

d. Earmarking Doctrine

Global also argued that funds held by the Debtor were earmarked for Global. "The earmarking doctrine applies where a third party lends money to the debtor for the specific purpose of paying a selected creditor.

. . . In such situations, the loan funds are said to be 'earmarked' and the payment is held not to constitute a voidable preference." *Cadle Co. v. Managan (In re Flanagan)*, 503 F.3d 171, 184 (2d Cir. 2007) (internal quotation marks and citations omitted). The earmarking doctrine applies "where a debtor receives funds subject to a clear obligation to use that money to pay off a preexisting debt, and the funds are in fact used for that purpose." *Id.* at 185. However, "where a new creditor provides funds to the debtor with no specific requirement as to their use, the funds do become part of the estate and any transfer of the funds out of the estate is potentially subject to trustee's avoidance powers." *Id.* Global put forth no evidence to demonstrate that the Debtor had an agreement with a third-party to pay its debt to Global. Thus, Global failed to demonstrate that the earmarking doctrine applies.

In sum, the Court concludes that the Bankruptcy Court properly found that Claim No. 27 should be reclassified as a general unsecured claim. Global failed to put forth any evidence to demonstrate that Claim No. 27 qualified as a secured claim. Further, Claim No. 27 does not qualify for administrative expense priority under any of the subsections of section 503 claimed by Global, nor does it qualify for priority under section 507(a)(7). Finally, Claim No. 27 plainly does not qualify for priority as an executory contract, nor is there any indication that funds held by the Debtor were earmarked by Global. Thus, Claim No. 27 was properly reclassified as a general unsecured claim.

C. Request for Relief from Stay

Global also sought to lift the automatic stay in order to have its claim against the estate be paid immediately. For the reasons explained below, the Court agrees with the Bankruptcy Court's conclusion that Global's request for relief from the stay should be denied.

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title . . . [and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a). However, section 362(d) provides that a court may terminate or modify the automatic stay "(1) for cause, including the lack of adequate protection of an interest in property of such party in interest" or "(2) with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d).

"Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property.'" *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (quoting 11 U.S.C. § 362(g)(1)). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id.* Although "cause" is not defined by the Bankruptcy Code, the Second Circuit has "adopted 12 factors to consider when deciding whether or not to lift a stay in order that litigation may continue to completion in another tribunal." *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Sonnax Indus., Inc.*, 907 F.2d at 1285-86). However,

16

courts consider the term "for cause" to be "a broad and flexible concept that must be determined on a case by case basis." *In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013) (citing *Bogdanovich*, 292 F.3d at 110 ("Not every one of these factors will be relevant in every case. . . . The ultimate determination whether to lift a stay depends upon the facts underlying a given motion." (citations omitted)). The Court agrees with the Bankruptcy Court's conclusion that, despite this flexible standard, Global failed to make an initial showing of cause. Section 362(a)'s automatic stay is meant to protect creditors to prevent "'those who acted first [from] obtain[ing] payment of the claims in preference to and to the detriment of other creditors.'" *In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013) (quoting H.R. Rep. No. 95–595, at 340 (1977)). Global has not articulated any reason why it should be entitled to payment for its general unsecured claim ahead of other creditors, nor why it should be entitled to proceed outside of bankruptcy to pursue claims against third parties who may have received the estate's assets. Thus, the Bankruptcy Court correctly denied Global's request for relief from the stay under section 362(d)(1).

Section 362(d)(2) requires the party requesting the stay to have a security interest or lien in the property. *See, e.g.*, *In re Hunt's Pier Assocs.*, 143 B.R. 36, 50 (Bankr. E.D. Pa. 1992) ("[R]elief under § 362(d)(2), requiring, as it does, a debtor's lack of equity in the property regarding which relief is sought, is only appropriately granted when the movant has a security interest in that property."); *In re U.S. Physicians, Inc.*, 236 B.R. 593, 596 (Bankr. E.D. Pa. 1999) ("The absence of a valid security interest eliminates 11 U.S.C. § 362(d)(2) as a basis for the Motion."). As discussed *supra*, Global failed to demonstrate that it was a secured creditor as to any of the Debtor's property. Because there is no evidence that the Debtor granted Global a security interest or lien in its property, or that the default judgment or writ of execution attached as a lien to Debtor's assets, the Bankruptcy Court properly denied Global's request for relief under section 362(d)(2).[6]

D. Allegations Against Trustee and His Professionals

Global also argued that the Trustee and his professionals should be removed because: (1) they put the Trustee and his professionals' fees ahead of Global's claim; (2) they allegedly made false statements and material omissions to the Bankruptcy Court in order to defraud Global; and (3) they failed to commence legal action against HUD. For the reasons explained below, the Court agrees with the Bankruptcy Court's conclusion that these arguments are without merit.

Section 324(a) provides that "[t]he court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." 11 U.S.C. § 324(a). "In defining 'cause' for removal, [the Second Circuit has] 'traditionally stressed the elements of fraud and actual injury to the debtor interests.'" *Dieffenbach v. Haworth (In re Haworth)*, 356 F. App'x 529, 530 (2d Cir. 2009) (quoting *In re Freeport Italian*

---

[6] To the extent that Global sought relief to pursue action for alleged "federal crimes" arising from the Debtor's failure to pay Global's claim, the Court agrees with the Bankruptcy Court's conclusion that it need not address whether any potential conduct by Global in commencing or continuing a criminal action would violate the automatic stay based on section 362(b)(1)'s exemption for the commencement or continuation of a criminal action or proceeding against a debtor because such action is speculative at this juncture.

*Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965)). "A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances." *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990) (citations omitted). Further, "courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee." *Id.* The party seeking removal bears the burden of proof. *See, e.g.*, *In re Belmonte*, 524 B.R. 17, 27-28 (Bankr. E.D.N.Y. 2015).

The Bankruptcy Code provides that compensation and reimbursement to a trustee may be awarded prior to distribution to holders of allowed general unsecured claims. Namely, section 330(a)(1) provides that "[a]fter notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee . . . (A) reasonable compensation for actual, necessary services rendered by the trustee . . . ; and (B) reimbursement for actual, necessary expenses," 11 U.S.C. § 330(a)(1), and section 503(b)(2) provides priority for "compensation and reimbursement awarded under section 330(a)." 11 U.S.C. § 503(b)(2).

Thus, the Trustee and his professionals' right to be paid before general unsecured creditors is clearly established by the Bankruptcy Code. Although Global filed an objection when the Trustee and his professionals submitted their first interim application for compensation and reimbursement to the Bankruptcy Court, Global's objection was overruled by Bankruptcy Judge Eisenberg and there was no objection by the United States Trustee or finding by the Bankruptcy Court that the Trustee and his professionals were not entitled to compensation. Global's contention that it should be paid sooner is simply insufficient to demonstrate that the Trustee and his professionals should be removed.

Global similarly failed to demonstrate that the Trustee should be disqualified for cause based on allegations of false statements and material omissions. Unsupported allegations that the Trustee made false statements and material omissions are plainly insufficient to demonstrate cause under section 324(a). *See, e.g.*, *Reagan v. Wetzel (In re Reagan)*, 403 B.R. 614, 623 (B.A.P. 8th Cir. 2009) (affirming denial of motion to remove trustee where debtor "did no more than raise conclusory contentions unsupported by specific facts and disagree with the trustee's business management.") *aff'd*, 374 F. App'x 683 (8th Cir. 2010).

Further, Global's argument that cause is demonstrated by the Trustee's failure to pursue claims against HUD is without merit. Global raised this issue before the Bankruptcy Court in its objection to the Ashley Settlement and at the March 4, 2014 hearing on the Trustee's motion to approve the settlement. After considering the issue, Judge Eisenberg found that the Trustee's decision not to file an adversary proceeding against HUD did not mean that he was acting improperly. *See In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. at 445 (citing Mar. 4, 2014 Tr. at 16 [No 12-8443 Action, Dkt. No. 27]). Further, the decision whether to pursue claims against a potential adversary qualifies as a discretionary decision that falls within the Trustee's purview and was reasonable under the circumstances. *See, e.g.*, *Mobile Diagnostech, Inc. v. Cohen (In re EquiMed, Inc.)*, 267 B.R. 530, 534 (D. Md. 2001) ("A trustee is granted complete authority and discretion regarding the prosecution of any litigation involving the debtor's estate." (citation omitted)); *In re Reed*, 178 B.R. 817, 821-22 (Bankr. D. Ariz. 1995) ("The trustee is granted complete authority and discretion

regarding the prosecution and defense of any litigation of the debtor's estate." (citation omitted)).

Thus, based on the lack of evidence to support Global's claim that the Trustee and his professionals acted improperly, the Court affirms the Bankruptcy Court's conclusion that Global failed to demonstrate that the Trustee should be removed for cause pursuant to section 324.

### III. CONCLUSION

For the foregoing reasons, Appellants' appeal of the Bankruptcy Court's decision denying Global's Claims Allowance Motion and granting the Trustee's Claims Objection Motion is denied. The Court affirms the rulings of the Bankruptcy Court in all respects. Appellee's motion to dismiss Appellants' appeal is denied as moot. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 27, 2016
      Central Islip, New York

\* \* \*

Appellants are proceeding *pro se*. Appellee is represented by Anthony C. Acampora, Justin S. Krell, and Ronald J. Friedman, of Silverman Acampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, NY 11753.